No. 13,019.

MAESTAS v. THE PEOPLE.
(11 P. [2d] 227)

Decided May 2, 1932.

Mr. JAMES P. VEERKAMP, for plaintiff in error.

Mr. CLARENCE L. IRELAND, Attorney General, Mr. WALLACE S. PORTH, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

JOE Maestas was found guilty of murder of the first

degree and his punishment fixed at death. He prosecutes this writ assigning as error the insufficiency of the evidence to sustain the verdict.

The facts are substantially as follows: Ben Addis, a registered pharmacist, was, on September 9, 1931, engaged as a salesman, and he together with his sister, Mrs. Millie Freeman, were traveling in an automobile to the San Luis Valley for the purpose of soliciting orders from merchants there. They arrived at Fort Garland, Costilla county, Colorado, at about ten o'clock on the evening of September 9, 1931, to find that the merchant there, upon whom they desired to call, had closed his place of business; they decided to spend the night there, sleeping in their car, and transact their business in the morning. They parked their car on vacant property near the roadside, closed their windows, locked their car doors, and, after they had been asleep for about two hours, Mrs. Freeman was awakened by defendant and one Fernandez attempting to open the car door on Mrs. Freeman's side. Mrs. Freeman awakened her brother, who asked defendant and Fernandez what they wanted, whereupon Fernandez disappeared, and defendant went to Addis's side of the car and, with curses, demanded that he open the window. Addis, in turn, demanded who defendant was, and was answered "that didn't make any difference who I am," and defendant again demanded that the window be opened, and asked for some identification card, which Addis gave him through the window, opened wide enough to pass out a card, but not sufficiently wide to allow defendant to push his hand through, as he attempted to do. After defendant had the identification card which Addis gave him, he complained that he could not read it in the darkness, and Addis suggested that if defendant would go to the front of the car, he, Addis, would turn on the lights. Defendant did as was suggested and Addis turned on the lights, and while defendant was apparently reading the card, Addis started the engine and attempted to back the car towards Fort Garland. Defendant got on

the bumper, and eventually on the running board, and from there broke the window glass on Addis's side of the car with his fist. In the meanwhile, the car was brought to a stop, and while Addis was attempting to put defendant off the running board, Mrs. Freeman got out of the car and ran towards Fort Garland for assistance, whereupon defendant ran after her, and when about to grab her, she eluded him and ran back to her brother who was then standing near the rear of the car. Defendant then disappeared for a short time, leaving Addis and his sister standing near the car, when he suddenly reappeared, and immediately fired several shots from an automatic pistol at Addis, inflicting wounds, from the effects of which Addis died the next day in a hospital at Alamosa.

While Addis was in the hospital, his dying declaration was taken, and was offered and admitted in evidence. Defendant was apprehended at La Veta the next day; the automatic pistol was found concealed on him; he admitted the shooting, but claimed that it was done in self-defense. He testified that after the struggle with Addis had ceased and he was leaving the scene, Addis called to him, and when he returned to Addis, Addis attempted to strike him with a car crank or some other similar instrument; that he retreated but that Addis persisted in the attempt to injure or kill him; that he fired three shots to scare Addis, but when this proved ineffectual, he shot Addis because he believed his life was endangered and that the shooting was absolutely necessary for his own protection. There was evidence that Addis had no instrument of any kind, and no such instrument as described by defendant was found in or near the car. Defendant is an ex-convict, illiterate, and was addicted to the use of intoxicating liquors, some of which he had imbibed the evening of the murder.

Defendant was indigent, and counsel who represented him at the trial, and also here, was appointed by the court to defend him.

The information charged that defendant and Fernandez "did then and there feloniously, wilfully and of their malice aforethought kill and murder * * *." At the conclusion of all the evidence, a motion for a directed verdict of not guilty was granted, as to defendant Fernandez, and a verdict of guilty returned by the jury, as to the defendant here.

No objection was made to any of the instructions given by the court, and no tendered instruction was refused. Counsel for defendant states in his brief: "* * * We shall present our argument under one general head and the point we wish to emphasize is that the evidence in this case failed to show 'deliberate and premeditated design' on the part of the defendant, Maestas, to kill at the time he fired the fatal shots that caused the death of Addis, and therefore, he is not guilty of murder in the first degree, * * *."

The jurors were instructed upon the question of premeditation and deliberation, and we must assume they followed the law as given them. In *Van Houton v. People,* 22 Colo. 53, 66, 43 Pac. 137, we held: "In this case the proof must establish deliberation and premeditation to support the verdict. Time, however, is not essential if there was a design and determination to kill formed in the mind of the defendant previous to or at the time the mortal wound was given. It matters not how short the interval, if it was sufficient for one thought to follow another, and the defendant actually formed the design to kill, and deliberated and premeditated upon such design before firing the fatal shot, this was sufficient to raise the crime to the highest degree known to the law. * * * Under these acts premeditation and deliberation are matters of inference and presumption to be drawn by the jury from the facts and circumstances leading up to, surrounding and explanatory of the homicide." The Van Houton case, supra, has been cited with approval on this point a number of times, and as recently as *Robinson v. People,* 76 Colo. 416, 418, 232 Pac. 672.

The rule announced therein states a correct principle of law, and is one of almost universal acceptation. There was ample evidence from which the jury might well find deliberation and premeditation.

Maestas was ably defended and his every right, both here and below, safeguarded by his counsel, who prosecutes this writ without compensation, save such as an attorney derives from the consciousness of a duty faithfully discharged, when called upon by the court, whose officer he is, to champion the cause of a penniless criminal. Maestas was guilty beyond a question of a doubt; his conviction was without prejudicial error, and our duty to affirm the judgment is clear.

The judgment is accordingly affirmed, and it is further ordered that it be executed during the week ending May 28, 1932.